## WAKEFIELD v. BROPHY et al.

(Supreme Court, Special Term, Westchester County.   April 15, 1910.)

1. MUNICIPAL CORPORATIONS (§ 996*)—ACTIONS AGAINST—STATUTORY PROVISIONS.

Code Civ. Proc. § 1925, giving an action to prevent waste of or injury to property of a village, etc., against any officer thereof by a citizen resident therein, prescribes an action against an officer because of some fraud or bad faith on his part, or to restrain some illegal action.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2166;  Dec. Dig. § 996.*]

2. MUNICIPAL CORPORATIONS (§ 868*)—CONTRACTS—VALIDITY.

Under General Village Law (Consol. Laws, c. 64) § 128, providing that no contract shall be made involving an expenditure by the village unless the money therefore is on hand, or a proposition has been adopted authorizing the board of trustees to raise such money, a contract by a village with an expert accountant to make an examination of past taxes and assessments and various compilations therefrom, to devise a new system of bookkeeping, and instruct the village officers therein, was void, where there were on hand no funds therefor, and no proposition had been submitted.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1842;  Dec. Dig. § 868.*]

3. MUNICIPAL CORPORATIONS (§ 58*)—CHARTER POWERS—"ORGANIC ACT."

The charter or statute by which a municipal corporation is created is its organic act, and neither the corporation nor its officers can do any act, make any contract, or incur any liability not authorized thereby, or by some legislative act applicable thereto.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 145–147;  Dec. Dig. § 58.*

For other definitions, see Words and Phrases, vol. 6, p. 5052.]

4. MUNICIPAL CORPORATIONS (§ 254*) — CONTRACTS — ILLEGAL CONTRACTS — RIGHT OF RECOVERY.

Where a contract with a village to perform services for a specified price is void, there can be no recovery for the services.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 696;  Dec. Dig. § 254.*]

5. MUNICIPAL CORPORATIONS (§ 247*)—CONTRACTS—VALIDITY.

Village officers have no authority to employ outside services to instruct officials how to perform their duties, but if they are incapable, such expense should be paid by themselves.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 651;  Dec. Dig. § 247.*]

6. STATUTES (§§ 174, 175*)—CONSTRUCTION—IMPLIED POWERS.

Where a statute commands an act to be done, it authorizes all that is necessary for its performance, but the power must be necessarily or fairly implied in or incident to some power expressly granted.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 254;  Dec. Dig. §§ 174, 175.*]

7. MUNICIPAL CORPORATIONS (§ 958*)—CHARTER—IMPLIED POWERS.

Port Chester Charter, tit. 4, § 8, provides that sales for nonpayment of taxes shall be made at least once in two years, but that sales may be

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ordered by the trustees at any time they deem necessary. Section 10 gives the board of trustees power to collect, by civil action in the name of the village, any tax or assessment which shall be returned as unpaid or uncollected. *Held* that, it not being impossible to ascertain from the books the amount of unpaid taxes and assessments to enable the officials to provide for a tax sale or for an efficient prosecution by actions for the recovery of unpaid taxes and assessments, and such labor not being of such a complicated character that the officials could not obtain the information which could be obtained by an expert accountant, it being merely clerical work, authority to employ an expert accountant was not given by the charter by implication as incident to the duties imposed upon the trustees to manage the finances of the village.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2033; Dec. Dig. § 958.*]

**8. OFFICERS (§ 103*)—CONTRACTS—NOTICE OF OFFICIAL'S POWER.**

A person contracting with public officers must take notice of their power, and is charged with knowledge of the law; and he makes a contract in violation thereof at his own risk.

[Ed. Note.—For other cases, see Officers, Cent. Dig. § 165; Dec. Dig. § 103.*]

Action by Wilson F. Wakefield against Edward V. Brophy and others, Trustees of the Village of Port Chester, and another, for an injunction. Judgment for plaintiff.

Frederick Sherman, for plaintiff.

William A. Sawyer (Henry Dykman, of counsel), for defendants.

MORSCHAUSER, J. The trustees of the village of Port Chester and the defendant Philip B. Gaynor on June 28th, 1909, entered into a contract in writing for services to be performed by Mr. Gaynor; first, to make an examination of past taxes and assessments and various compilations therefrom, and for which he was to be paid $4,-800; and, secondly, the devising of a new and efficient system of bookkeeping and accounting, and for the instruction of the various village officers, such as treasurer, tax receiver, and clerks, for which he was to receive $1,200. At the time of making the contract involving the expenditure of this money by the village that amount was not on hand, nor had there been a proposition submitted to raise the money. The plaintiff commenced this action for an injunction to restrain the officials of the village from paying the defendant Gaynor the sum of $6,000, claimed to be due him for the performance of such work as a certified public accountant. The complaint alleges that said contract was invalid as being beyond the power of the board of trustees of the village to make, by whose purported authority it was made. The complaint also alleged that at the time of the making of the contract no proposition had been adopted at any village election authorizing such expenditure; and that at the time of making the alleged contract the amount of money was not on hand, and that the contract was to secure the performance of work which was required to be done by the various village officials, there being no express authority by the charter or otherwise empowering the trustees to employ such outside services. The action authorized by section 1925 of the Code is one which the taxpayer may bring against the public officer because of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

some fraud or bad faith on his part, or to restrain some illegal action. Ziegler v. Chapin et al., 126 N. Y. 342, 348, 349, 27 N. E. 471. The complaint in this action does not allege fraud or corruption or bad faith amounting to a fraud, but only that the making of the alleged contract was illegal, and was made without authority. I have to deal only with the illegality of the contract.

The contract fixed an amount of money to be paid to Gaynor for services to be rendered without the proposition having been submitted to raise the money, and when there was not sufficient money in the general or contingent fund to meet this expenditure. "No contract shall be made involving an expenditure by the village, unless the money therefore is on hand, or a proposition has been adopted authorizing the board of trustees to raise such money." General Village Law (Consol. Laws, c. 64) § 128. That there was no such proposition submitted and adopted is conceded. The trustees had no power to enter into this contract on June 28, 1909, with defendant Gaynor when it did not have on hand the funds therefor, and the contract was void and illegal. "Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto." Dillon, Municipal Corporations (4th Ed.) § 89. The contract being illegal and void, Gaynor cannot recover for his services. · Dickinson v. Poughkeepsie, 75 N. Y. 65; McDonald v. Mayer, 68 N. Y. 23, 23 Am. Rep. 144. People ex rel. Coughlin v. Gleason, 121 N. Y. 634, 25 N. E. 4. But assume there were sufficient funds in the general or contingent fund, still I believe the contract illegal because the trustees did. not have the express or implied power to make it. I do not believe there was any authority to agree to pay $1,200 to employ outside services to instruct the officials how to perform their duties, and, if they. were incapable, such expense should be paid by them. Wakefield v. Perkins, 65 Misc. Rep. 619, 120 N. Y. Supp. 635.

As was said by Mr. Justice Vann in the case of Village of Ft. Edwards v. Fish, 156 N. Y. 366, 375, 50 N. E. 973, 976:

"It is a matter of grave public concern to protect municipal corporations from the unauthorized and illegal acts of their agents in wasting the funds of the taxpayers. It is only with the utmost difficulty that municipal officers and agents can be kept within the bounds of their authority now."

Mr. Justice Woodward in the Matter of Locust Avenue, 93 App. Div. 419, 87 N. Y. Supp. 800, quoting the foregoing language said:

"And it is the duty of the courts to insist at all times when such action is challenged that the authority to act shall be plainly expressed in the statute, or necessarily implied, and that all of the provisions ·intended for the security of the taxpayers and the property owner shall be strictly complied with." Schneider v. City of Rochester, 160 N. Y. 165–172, 54 N. E. 721, and the authorities there cited.

It is contended on the part of the defendants that under the special village law, under which the village of Port Chester was incorporated, the trustees were directed to hold a tax sale, and to sue for back taxes, and that the tax sale was to be held at least once in two years. The law is well settled that when a statute commands an act to be

done, it authorizes all that is necessary for its performance. Armstrong v. Village of Ft. Edwards, 159 N. Y. 318, 53 N. E. 1116; Mayor v. Sands, 105 N. Y. 210, 11 N. E. 820. By the charter of the village of Port Chester (section 8, tit. 4), it is provided that sales for nonpayment of taxes shall be made at least once in two years, but sales may be ordered by the trustees at any time they may deem necessary. By section 10, the board of trustees have power to collect by civil action in the name of the village any tax or assessment "which shall be returned by the receiver as unpaid or uncollected." It was their duty to authorize the commencement of actions for unpaid taxes or assessments which were returned by the receiver as unpaid or uncollected. In many cases where they are authorized to do an act, they are authorized to do all things necessary for its performance, but I do not believe that the courts will imply the power to make a contract as the trustees made in this case. Under certain circumstances, boards of trustees and municipal officers may by necessary implication have power to incur expenses and make expenditures.

In a recent case (O'Brien v. City of Niagara, 65 Misc. Rep. 92, 119 N. Y. Supp. 497), the city was authorized to investigate the managements of city officers and departments, and in making such examination a stenographer was employed, and the court directed judgment for the plaintiff in that action for such services rendered.

In Peterson v. Mayor, 17 N. Y. 449, under a power "to establish markets," it was held that the council might employ an architect to prepare plans for a market building.

So in the case of Cain v. Warner, 45 App. Div. 450, 60 N. Y. Supp. 769, the charter of the city of Rochester provided that the police department should be under the general control and management of police commissioners. Held, that they had implied power to employ a police surgeon to render services made necessary by the rules and regulations for the government and discipline of the force adopted by it pursuant to the charter.

Many cases may be cited where the power is necessarily or fairly implied to municipal officers charged with the performance of some official duty by the charter, but it must be reasonably applied, and there must be a limit to this implied power. There are many cases that may be cited where it is held that municipal officials did not have the implied power to act. See O'Conner v. Walsh, 83 App. Div. 179, 82 N. Y. Supp. 499; In re McNeile, 107 App. Div. 338, 95 N. Y. Supp. 146; People v. Supervisors of Queens Co., 6 Hun, 304; Lyddy v. Long Island City, 104 N. Y. 218, 10 N. E. 155.

In the Lyddy Case, the plaintiff had performed legal services at the request of the common council in making certain investigations of certain alleged abuses of the water commissioners, the court held that the charter did not authorize the employment outside the law department for that or any other purpose, the defendant could not become legally bound to plaintiff, and he was without remedy against defendant for his services.

In Dillon on Municipal Corporations (4th Ed.) § 89, it is said:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no other: First,

those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

"The power must be necessarily or fairly implied in or incident to some power expressly granted." Cain v. Warner, 45 App. Div. 450–452, 60 N. Y. Supp. 769, 770. "Implied power can be inferred only from the general scope of the actual power and necessity of doing something essential to the efficient exercise thereof." Village of Ft. Edwards v. Fish, 156 N. Y. 363–372, 50 N. E. 973, 975.

It was not impossible from the books to ascertain the amount of unpaid taxes and assessments to enable the officials to provide for a tax sale or for an efficient prosecution by actions in the courts for the recovery of the arrears of such taxes and assessments, and the services were not of such a complicated character that the officials having charge thereof could not have obtained the same information that was obtained by Mr. Gaynor. It required no technical knowledge to obtain this information. It was simply clerical work. Mr. Justice Pound, in the case of the Village of Kenmore, 59 Misc. Rep. 396, 110 N. Y. Supp. 1014, said:

"The question presented was whether the board of trustees have power to make this contract. By section 88, subd. 1, of the village law, the board of trustees is invested with the management and control of the finances of the village, while the authorities of this state recognize a wide range of implied powers, the board of trustees are agents with the limited powers to whom the principle of strict construction is applicable; and they have no power to make a contract or to pay money unless such power is expressly or impliedly authorized by statute. Village of Ft. Edwards v. Fish, 156 N. Y. 363, 50 N. E. 973. Can it be said that the employment of an expert accountant for the above purpose is a necessary or proper incident to the duties imposed upon the trustees to manage and control the finances of the village? Is employment of such an accountant for such purposes customary and usual? I am of the opinion that it is not, and that the board had no power to employ Mr. Wood in the capacity of an auditor of the books and accounts of the trustees, unless it appeared that such finances could not be managed and controlled as well without such assistance as with it; and that fact does not appear to be established by the evidence."

So, in this case, the fact does not appear that the officials themselves could not have obtained the desired information without the employment of an expert accountant. It is suggested that Mr. Gaynor performed the services and should be paid therefore. Said Mr. Justice Earl in Parr v. Village of Greenbush, 72 N. Y. 472:

"But the claim is made that, as the work and materials were furnished, and the village has received some benefit from them, it is under an implied obligation to pay what they were worth. If this were so, the law could always be easily evaded; that it is not so is no longer an open question in this court." Brady v. City of New York, 20 N. Y. 312; McDonald v. Mayor, 68 N. Y. 25, 23 Am. Rep. 144.

Said Mr. Justice Hand in Dickinson v. Poughkeepsie, 75 N. Y. 74:

"This principle may some time work hardly; but it is better, says the United States Supreme Court, that an individual should occasionally suffer from the mistake of public officers or agents, than to adopt a rule which, through improper combinations or collusion, might be turned to detriment or

injury of the public." Whiteside v. United States, 93 U. S. 247–257, 23 L. Ed. 882; Hawkins v. United States, 96 U. S. 691, 24 L. Ed. 607.

A person contracting with public officers must take notice of their power. He is charged with knowledge of the law, and he makes a contract in violation of law at his own risk. The charter, nor the general village law, did not authorize the board of trustees to employ an expert accountant to perform the services under the contract, nor do I believe that, with the official duties with which they were charged, it can be necessarily implied that they had such authority.

The plaintiff is entitled to relief asked for in the complaint. Costs cannot be allowed under the authority of O'Conner v. Walsh, 83 App. Div. 183, 82 N. Y. Supp. 499.